UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
KINGVISION PAY-PER-VIEW LTD.,
as Broadcast Licensee of the November 13, 2004
RUIZ/GOLOTA Program,

                              Plaintiff,

    -against-

LIDOINE CAZARES, Individually and as officer,
director, shareholder and/or principal of PUEBLA
SEAFOOD CORPORATION d/b/a/ PUEBLA
GROCERY DELI a/k/a PUEBLA GROCERY &
DELI, and PUEBLA SEAFOOD CORPORATION
d/b/a PUEBLA GROCERY DELI a/k/a PUEBLA
GROCERY & DELI,

                            Defendants.
----------------------------------------------------------------X

REPORT AND
RECOMMENDATION
05 CV 2934 (DGT) (RML)

LEVY, United States Magistrate Judge:

       By order dated January 17, 2006, the Honorable David G. Trager, United States District Judge, granted plaintiff's motion for a default judgment against defendants Lidoine Cazares and Puebla Seafood Corporation and referred the issues of compensatory damages, punitive damages and attorney's fees to me for Report and Recommendation. For the reasons stated below, I respectfully recommend that plaintiff be awarded $4,000 in statutory damages and $2,056.25 in attorney's fees and costs.

## BACKGROUND AND FACTS

       Plaintiff Kingvision Pay-Per-View, Ltd. ("plaintiff" or "Kingvision") brought this action in June 2005 alleging violations of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605 (1991). Plaintiff alleges that defendants Lidoine Cazares and Puebla Seafood Corporation ("defendants") procured or received pay-per-view cable television services

without authorization or consent. After the defendants failed to appear or answer in this action, plaintiff moved for the entry of a default judgment.[1] On January 17, 2006, Judge Trager granted plaintiff's motion and referred the issues of compensatory damages, punitive damages and attorney's fees to me for Report and Recommendation. By order dated January 11, 2006, I noted that plaintiff had filed a submission in support of its claims for damages and attorney's fees, and I directed the defendants to serve and file any opposition on or before April 7, 2006. To date, the court has received no communication from these defendants.

Once a default judgment is entered, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 487 (S.D.N.Y. 1999); Time Warner Cable of New York City v. Olmo, 977 F. Supp. 585, 587 (E.D.N.Y. 1997). This court must therefore accept plaintiff's allegations as true. Plaintiff's allegations are as follows:

Plaintiff is a Delaware corporation that owns the commercial distribution rights to the November 13, 2004 Ruiz/Golota prize-fight ("the Event"). (Complaint ("Compl.") ¶ 12.) The Event was transmitted by encrypted satellite signal. For a fee, a customer could receive an unscrambled signal and display the Event to its patrons. (Id. ¶¶ 12-13.) According to plaintiff, the licensing fee to legitimately purchase the Event for exhibition in a commercial establishment

---

[1] The defendants did appear, via counsel, for an initial conference before me on October 24, 2005. At that conference, I directed the defendants to file an answer electronically by November 30, 2005, and I set a discovery deadline of January 31, 2006. The defendants did not comply with that order; as a result, Judge Trager issued a default judgment against them on January 17, 2006.

was $625. (Plaintiff's Memorandum of Law, dated Jan. 11, 2006 ("Pl.'s Mem."), at 7.)[2]

Defendant Puebla Seafood Corporation d/b/a Puebla Grocery Deli a/k/a Puebla Grocery & Deli is a business located at 95-27 Roosevelt Avenue in Jackson Heights, New York (the "Establishment"). (Compl. ¶ 7.) Upon information and belief, defendant Lidoine Cazares is an officer, director, shareholder and/or principal of the Establishment. (See Compl.)[3] Plaintiff sent an independent auditor named Cosmo Lubrano to the Establishment on November 13, 2004 during the broadcast of the Event. (Affidavit of Donna K. Westrich, sworn to October 18, 2005 ("Westrich Aff."), ¶ 7.) Lubrano observed one television showing the Event with approximately five patrons in the Establishment. (Id.) Defendants had not contracted with plaintiff to receive or display the Event; nor were they otherwise authorized to do so. (Compl. ¶ 15.; Westrich Aff. ¶ 8.) Plaintiff asserts that the only way the Event could have been shown in the Establishment was if an owner or an agent committed a wrongful act to receive the satellite signal. (Compl. ¶ 16; Pl.'s Mem. ¶ 10.)

Plaintiff seeks statutory damages of $10,000 under 47 U.S.C. § 605(e)(3)(C)(i)(II), as well as $100,000 under § 605(e)(3)(C)(ii) for willful misappropriation for personal or private financial gain, but urges this court to award no less than $1,375.00 as

---

[2] Plaintiff's Memorandum of Law refers to an internal Kingvision memorandum sent to Kingvision Sales Agents, regarding pricing for the Event, to support this contention. (See Pl.'s Mem. at 7; Affidavit of Donna K. Westrich, sworn to Oct. 18, 2005 ("Westrich Aff."), Ex. B.)

[3] Nowhere in the body of the complaint does plaintiff allege that the individual defendant has any connection with the Establishment. The allegation that Lidoine Cazares is an "officer, director, shareholder and/or principal" of the Establishment appears only in the caption. (See, e.g., Compl. ¶ 6 (alleging only that this defendant "resides at 4011 95th Street, Elmhurst, New York 11373-1772.").) However, since Judge Trager has granted a default judgment against this defendant, the sufficiency of the complaint on this issue is not before me.

statutory damages[4] and no less than $10,000 in enhanced damages. (Pl.'s Mem. at 6 - 8.)

Plaintiff also seeks attorney's fees and costs of $3,056.42 under § 605(e)(3)(B)(iii). (See Affidavit of Julie Cohen Lonstein, Esq., sworn to Jan. 11, 2005 ("Lonstein Aff.").)

## DISCUSSION

A. Damages under the Communications Act

1. Statutory Damages

Plaintiff seeks damages under 47 U.S.C. § 605, which states, in relevant part:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Satellite cable programming clearly falls under this law. See 47 U.S.C. § 605(d)(3).

Section 605 further states that where a plaintiff is unable to provide evidence of the extent of any violations, the plaintiff may elect to recover statutory damages, rather than actual damages. See 47 U.S.C. § 605(e)(3)(C)(i). As a result of the default, Kingvision has been unable to ascertain the extent of this defendant's violations. Plaintiff has therefore elected to recover statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II), which allows for statutory damages for "each violation of subsection (a) of this section . . . in a sum of not less than $1,000

---

[4] Plaintiff's Memorandum of Law estimates damages based on the capacity of the Establishment (25) multiplied by $55.00 (rounded up from the $54.95 cost to purchase the Event residentially). (Pl.'s Mem. at 6.)

or more than $10,000, as the court considers just . . . ."

The amount of damages assessed pursuant to § 605 rests within the sound discretion of the court. 47 U.S.C. § 605(e)(3)(C)(i)(II); see also Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993). Most courts faced with the unauthorized commercial receipt and broadcast of a cable program have assessed damages based on the number of patrons in the establishment at the time of transmission. See Joe Hand Promotions, Inc. v. Hernandez, No. 03 Civ. 6132, 2004 WL 1488110, at *2 (S.D.N.Y. June 30, 2004) (awarding $50 per patron against establishments for unauthorized display of pay-per-view boxing match); Googies Luncheonette, 77 F. Supp. 2d at 490 (same); New Contenders, Inc. v. Diaz Seafood Corp., No. 96 CIV. 4701, 1997 WL 538827, at *2 (S.D.N.Y. Sept. 2, 1997) (awarding $300 per patron under § 605); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (awarding $50 per patron against restaurant for unauthorized display of pay-per-view boxing match); Kingvision Pay-Per-View Corp. v. Prime Time Saloon, Inc., slip op., No. 95 CV 1442 (E.D.N.Y. Sept. 30, 1996) (awarding $50 per patron, plus $10 per patron to reflect a $10 cover charge); Cablevision Sys. Inc. v. Doudlesox, Inc., slip op., No. 89 CV 0500 (E.D.N.Y. Aug. 24, 1989) (awarding $30 per patron). As one court has explained, the per-patron valuation "is based on a theory of rough justice" that the patrons viewing the event without access to the unauthorized showing "would have ordered it themselves [at a cost of approximately $50 each]." Googies Luncheonette, 77 F. Supp. 2d at 490. "Plaintiff is thus fully compensated for any loss it suffered," and by divesting the defendant of any profits, "it assures that [defendant] reap[s] no benefit from unlawful action." Id.

A private residence would have been able to purchase the Ruiz/Golota event for

$54.95. (Pl.'s Mem. at 6.) Numerous decisions in this district have awarded damages based on the residential fee multiplied by the number of patrons in the establishment. See, e.g., Garden City Boxing Club, Inc. v. Rosado, No. CV 05-1037, 2005 WL 3018704, at *3 (E.D.N.Y. Oct. 6, 2005) (recommending statutory damage award of $989.10, representing $54.95 for each of the 18 patrons that the investigator observed in the establishment during the prize fight); Garden City Boxing Club, Inc. v. Bello, No. CV-05-1300, 2005 WL 2496062, at *3 (E.D.N.Y. Sept. 20, 2005) (recommending statutory damage award of $2,198, representing $54.95 for each of the 40 patrons who could have viewed the prize fight based on the establishment's capacity);[5] Garden City Boxing Club v. Morales, slip op., 05-CV-0064 (Aug. 18, 2005) (recommending statutory damage award of $3,297, representing $54.95 for each of the 60 patrons who witnessed the event). This calculation is based on the assumption that each patron would have paid to view the fight from home had he or she not had access to a free broadcast at a neighborhood establishment. See Bello, 2005 WL 2496062, at *3.

    I find the per-patron valuation appropriate here. According to the report of the

---

[5] In using the establishment's capacity, rather than the number of patrons the investigator observed, Judge Azrack explained that it was "entirely possible that at some point in the evening the restaurant did indeed hold that maximum number, if not more, as it is debatable whether an establishment that deigns to display illegally pilfered boxing matches to attract additional customers would turn away those very same customers when the facility reached its maximum capacity." Bello, 2005 WL 2496062, at *3. The instant case is distinguishable in that the establishment at issue, Puebla Seafood Corporation, does not appear to be a restaurant or bar. Although the complaint states that the nature of this defendants' business "is unknown," (Compl. ¶ 7), the investigator described the establishment as a "[g]rocery deli" (Westrich Aff., Ex. D.), and the establishment's name suggests that it is a grocery store or deli, i.e., not the type of business that would ordinarily attract large numbers of customers by showing a prize fight. I also find this analysis somewhat speculative and prefer to hold the plaintiff responsible for supporting its request with evidence concerning the actual number of patrons who viewed the Event.

investigator, there were approximately five patrons present during the broadcast of the Event. Five multiplied by $54.95 would lead to an award of $274.75. Because this sum falls below the $1,000 statutory minimum under 47 U.S.C. § 605(e), I recommend that the damage amount be increased to $1,000.

### 2. Enhanced Damages

Plaintiff also seeks an increased award pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), which provides:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, . . . by an amount of not more than $100,000 for each violation of subsection (a) of this section.

Willfulness is defined as "disregard for the governing statute and an indifference for its requirements" (Cablevision Sys. N.Y. City Corp. v. Lokshin, 980 F. Supp. 107, 114 (E.D.N.Y. 1997) (quoting Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 126-27 (1985)), and is established by the fact that an event is broadcast without authorization. See Googies Luncheonette, 77 F. Supp. 2d at 490 ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."). Courts use a variety of factors in determining whether a defendant's willful conduct justifies enhanced damages. These factors include (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) advertising the broadcast; and (4) charging an admission fee or charging premiums for food and drinks. See Kingvision Pay-Per-View Ltd. v. El Rey Del Bistec y Caridad, Inc., No. 01-CV-6562, 2001 WL 1586667, at *2 (S.D.N.Y. Dec.12, 2001).

In this case, the defendants never contracted for the right to broadcast the Event and, accordingly, were not authorized to intercept, receive or transmit communication of the Event. (See Compl. ¶¶ 15-16.) In order to have received the Event, someone connected with the Establishment had to have engaged in some deliberate act. (See id.) Indeed, since the transmission of the Event was electronically coded and the Establishment was not authorized to receive the transmission, an owner or operator must have used an illegal decoding device or some other unlawful means. (Id.) Therefore, the conduct was willful. In addition, the court may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct. See Fallaci v. The New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983).

On the other hand, plaintiff does not allege that the defendants advertised the display of the Event in order to entice customers into the Establishment, showed the Event on multiple television sets, charged a cover fee, or served any food or drink from which it could earn a profit. Nor does plaintiff contend that this Establishment has engaged in more than one violation.

In light of the circumstances surrounding the display, I respectfully recommend that an additional award of $3,000 in enhanced damages, *i.e.*, a factor of three times the per-patron amount, be assessed against the defendants for willful violation of the Communications Act. See Kingvision Pay-Per-View Ltd. v. Olivares, No. 02 Civ. 6588, 2004 WL 744226, at *4 (S.D.N.Y. Apr. 5, 2004) ("Generally, it is reasonable to increase an actual or statutory damages award by a specific percentage to penalize a defendant for willful acts"); Googies Luncheonette, 77 F. Supp. at 491 (imposing additional damage award of $3,000, or three times the base award,

against defendant with no record of any other theft of cable services or other intellectual property, to "serve as a reasonable deterrent against future violations"); see also Kingvision Pay Per View Corp. v. Lempira Restaurant Night Club, slip op., 98 CV 2160 (E.D.N.Y. Feb. 16, 1999) (awarding $3,000 in enhanced damages where defendant displayed prize fight to approximately 31 patrons on two television sets); Taco Rapido Rest., 988 F. Supp. at 112 (imposing enhanced damages award of $5,000 where defendant displayed boxing match to approximately 75 patrons on one television set); Broadcast Music, Inc. v. R Bar of Manhattan, Inc., 919 F. Supp. 656, 660 (S.D.N.Y. 1996) (increase of five times the base award for willful acts).[6]

The complaint names both the principal and the Establishment as defendants. I recommend that plaintiff's award be limited to a single recovery of $4,000 ($1,000 compensatory plus $3,000 enhanced). In other words, the defendants should be held jointly and severally liable for a single award of $4,000 in statutory damages. See Entertainment by J&J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., No. CV-01-3945, 2002 WL 2022522, at *5 (E.D.N.Y. May 21, 2002).

       3. Attorney's Fees and Costs

As the prevailing party, plaintiff is also entitled to an award of reasonable

---

[6] Plaintiff cites Entertainment By J & J, Inc. v. Ramsarran, No. 01-CV-5223, 2002 WL 720480 (E.D.N.Y. Mar. 11, 2002) (incorrectly referred to in plaintiff's brief as "Roopnarian"), as an example of a case in which the court awarded wilfulness damages of $10,000. I note, however, that in Ramsarran the court awarded $5,000 in statutory damages. Id. at *2. Thus, the award for wilfulness was twice the statutory damage award, compared with the treble damage award recommended here. Again, however, the award is discretionary, and I find an award of three times the base amount reasonable in this case. Such an amount is sufficient to deter future piracy by this small business.

attorney's fees and costs in this action. 47 U.S.C. § 605(e)(3)(B)(iii). An award of full costs, including reasonable attorney's fees, to the prevailing party is mandated for a violation of § 605. International Cablevision, Inc. v. Sykes, 997 F.2d 998, 1008 (2d Cir. 1993); Time Warner Cable of New York City v. U.S. Cable T.V., Inc., 920 F. Supp. 321, 329 (E.D.N.Y. 1996). Under the "lodestar" method, attorney's fees are determined by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

In the Second Circuit, applications for attorney's fees must be supported by contemporaneous time records specifying "relevant dates, time spent and work done." Broadcast Music, 919 F. Supp. at 661 (citing Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994); Lewis v. Coughlin, 801 F.2d 570, 577 (2d Cir. 1986); New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983)). In the present case, attorney Julie Cohen Lonstein has submitted an affidavit stating that she and her firm, Lonstein Law Office, P.C., expended a total of 13.00 hours during the pendency of this action. (See Lonstein Aff.) She has not submitted documentation to authenticate the number of hours spent, but her affidavit summarizes the work done and the hours expended. Courts recognize that "[a]ttorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous records satisfy [this requirement] and suffice to permit recovery of attorneys' fees," as do "typewritten transcriptions of the original handwritten time sheets filled out by attorneys. . . ." David v. Sullivan, 777 F. Supp. 212, 223 (E.D.N.Y. 1991); see also Cruz, 34 F.3d at 1160 (typed summaries of hours drawn from contemporaneous time records, without submission of actual time records, was sufficient to

support attorney's fees application). The number of hours for which counsel seeks compensation is somewhat excessive for what amounts largely to the performance of clerical tasks and the preparation of unremarkable, boilerplate submissions. On the other hand, counsel did appear in court for the initial conference in this case. Therefore, I respectfully recommend that counsel be compensated for seven attorney hours and 2.75 paralegal hours.

The hourly rates plaintiff requests – $200 per hour for Ms. Lonstein and $75 per hour for a paralegal – seem reasonable and in line with the rates charged for comparable work in this area. See, e.g., Rosado, 2005 WL 3018704, at * 6 (awarding same hourly rates to this counsel). I therefore recommend that plaintiff be awarded attorney's fees of $1,606.25 ($1,400 plus $206.25).

Plaintiff also seeks reimbursement for costs in the amount of $900, which includes $250 for filing fees, $200 for service of process, and $350 for investigation fees. (Lonstein Aff. ¶ 3.) The costs for filing fees and service of process are reasonable. As for the investigator's fee, courts are divided as to whether that cost is recoverable. Compare Kingvision Pay-Per-View Ltd. v. Cardona, No. 03 Civ. 3839, 2004 WL 1490224, at *4 (S.D.N.Y. June 30, 2004) (denying request for recovery of investigator's fees and stating that "[t]here is no provision for a prevailing party to be awarded the cost of its investigator."); Joe Hand Promotions, Inc. v. Soto, No. 01 Civ. 0329, 2003 WL 22962810, at *2 (S.D.N.Y. Dec. 17, 2003) ("there is no authority to award 'investigative fees' as costs"); Time Warner Cable of New York City v. Sanchez, No. 02 Civ. 5855, 2003 WL 21744089, at *5 (S.D.N.Y. July 8, 2003) ("There is no provision . . . for a prevailing party to be awarded the cost of its investigator."), with Kingvision v. Tardes Calenas, slip op., 04-CV-3624 (E.D.N.Y. Aug. 22, 2005) (recommending

that plaintiff be awarded expenses incurred for an investigator because the investigation was "incidental and necessary" to the prosecution of the case); Garden City Boxing Club, Inc. v. Guzman, No. 03 Civ. 8776, 2005 WL 1153728, at *4 (S.D.N.Y. Apr. 26, 2005) (awarding investigator's fee as part of costs without discussion); Kingvision Pay-Per-View, Ltd. v. Recio, No. 02 Civ. 6583, 2003 WL 21383826 (S.D.N.Y. June 11, 2003) (same). See also Bello, 2005 WL 2496062, at *6 (acknowledging that there is no statute or federal rule allowing the recovery of investigator costs, but awarding $100 of the $450 requested because the plaintiff "did provide an affidavit and invoice detailing the amount of time spent on the investigation and the rate."). Because there is no legal basis for an award of such fees as an element of costs, I decline to recommend an award for the investigator's fee.

Based on the foregoing, I recommend that Kingvision be awarded $450 in costs, representing the filing fee and the cost for service of process for these defendants.

## CONCLUSION

For the reasons stated above, I respectfully recommend that plaintiff be awarded $4,000 in damages and $2,056.25 in attorney's fees and costs. Any objection to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Trager and to my chambers, within ten (10) business days. Failure to file objections within the specified time period waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); See also Fed. R. Civ. P. 72, 6(a), 6(e).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
July 6, 2006